```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
                                     :
LAW FIRM OF OMAR T.                  :
MOHAMMEDI, LLC,                      :
                                     :
                  Plaintiff,         :
                                     :
       -against-                     :    17 Civ. 4567 (ER)(HBP)
                                     :
COMPUTER ASSISTED PRACTICE           :    OPINION
ELECTRONIC MANAGEMENT SOLUTIONS,     :    AND ORDER
d/b/a "Capems, Inc.," KENNETH        :
CULLEN, in his professional and      :
individual capacities, and JUSTIN    :
GORKIC, in his professional and      :
individual capacities,               :
                                     :
                  Defendants.        :
                                     :
-------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/27/18

PITMAN, United States Magistrate Judge:

I.  Introduction

By notice of motion dated May 18, 2018, defendants, Computer Assisted Practice Electronic Management Solutions, d/b/a "Capems, Inc.," Kenneth Cullen, and Justin Gorkic (collectively "Defendants"), seek to disqualify plaintiff's counsel, Elizabeth Kimundi, Esq., on the basis of the advocate-witness rule (Motion to Disqualify Counsel, dated May 18, 2018 (Docket Item ("D.I.") 57) at 2).  For the reasons set forth below, Defendant's motion is denied.

II. Background

Defendants were retained by plaintiff in January 2012 to perform various services related to plaintiff's computers. Plaintiff alleges that Defendants breached the service contract, violated the Computer Fraud and Abuse Act and converted plaintiff's property (Memorandum of Law in Opposition to Defendants' Motion to Disqualify Counsel, dated June 1, 2018 (D.I. 60) ("Plaintiff's Memorandum") at 8).

Among other things, plaintiff alleges that, pursuant to the contract, it requested that Defendants replace a tablet device with a laptop computer supplied by plaintiff (Complaint, dated June 16, 2017 (D.I. 1) ¶ 39). Rather than replacing the tablet, Defendants swapped the hard drives of the two devices because Defendants allegedly could no longer install the Windows 7 operating system on the laptop (Plaintiff's Memorandum at 4). Plaintiffs allege Defendants intentionally concealed that Windows 7 could no longer be provided and instead swapped the hard drives when Omar Mohammedi was not present in the office. In addition, plaintiff claims that neither device worked after the hard drives were swapped and that the original hard drive that was later removed from the tablet went missing (Plaintiff's Memorandum at 4). A conversation took place between defendant Gorkic and

2

Kimundi prior to the foregoing work, and the present dispute arises out of that conversation.

Defendants recorded all conversations between itself and its clients, and, therefore, have a recording of the conversation in issue (Affidavit of Justin Gorkic, sworn to May 18, 2018 (D.I. 58) ("Gorkic Aff.") ¶ 3).[1] Defendants claim that the conversation between Gorkic and Kimundi is relevant to the action, makes Kimundi a witness and requires that she be disqualified. Specifically, Defendants claim that Kimundi's testimony would contradict plaintiff's contention that Kimundi did not have authority to make decisions regarding the scope of the Defendants' work (Affidavit of Lawrence H. Schoenbach, Esq., sworn to May 18, 2018 (D.I. 58-1) ("Schoenbach Aff.") ¶ 20). Further, Defendants claim that Kimundi's testimony will show that Defendants informed plaintiff that they were swapping the hard drives and that Kimundi gave them permission to do so.

---

[1] A transcript of the relevant portions of the conversation, as prepared by Defendants' counsel, is annexed hereto as an appendix.

3

III. Analysis

   A. Legal Standard for
      Motion to Disqualify

A motion to disqualify an attorney is committed to the discretion of the court. Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994). "While New York law governs the professional conduct of attorneys in this state, '[t]he authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process.'" Air Italy S.p.A. v. Aviation Techs., Inc., No. 10-CV-20 (JG)(JMA), 2011 WL 96682 at *3 (E.D.N.Y. Jan. 11, 2011), quoting Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005). The Second Circuit has held that "[a]lthough our decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules, . . . such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, supra, 409 F.3d at 132 (citations omitted); accord Solow v. Conseco, Inc., 06 Civ. 5988 (BSJ)(THK), 2007 WL 1599151 at *3 (S.D.N.Y. June 4, 2007) (Katz, M.J.). "Disqualification is only warranted in the rare circumstance where an

4

attorney's conduct 'poses a significant risk of trial taint.'" Decker v. Nagel Rice LLC, 716 F. Supp. 2d 228, 231 (S.D.N.Y. 2010) (Scheindlin, D.J.), quoting Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981). However, "any doubt [with respect to whether disqualification should be ordered] is to be resolved in favor of disqualification." Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975) (citation omitted); accord Heyliger v. J.D. Collins, No. 3:11-CV-1293 (NAM/DEP), 2014 WL 910324 at *2 (N.D.N.Y. Mar. 10, 2014).

In view of their potential for abuse as a tactical device, motions to disqualify opposing counsel are subject to particularly strict scrutiny. Murray v. Metro. Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009), citing Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989). Courts are also reluctant to grant motions to disqualify because they inevitably result in delay and added expense. Evans v. Artek Sys. Corp., 715 F.2d 788, 792 (2d Cir. 1983) (disqualification motions "inevitably cause delay" (citation omitted)); D.R.T., Inc. v. Universal City Studios, Inc., 02 Civ. 0958 (BSJ)(JCF), 2003 WL 1948798 at *2 (S.D.N.Y. Apr. 24, 2003) (Francis, M.J.). For these reasons, "the Second Circuit requires a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel in order to protect a client's right to freely choose counsel." Kubin v.

Miller, 801 F. Supp. 1101, 1113 (S.D.N.Y. 1992) (Kram, D.J.), citing Gov't of India v. Cook Indus., 569 F.2d 737, 739 (2d Cir. 1978).

B. Advocate-Witness Rule

Effective April 1, 2009, New York adopted the Rules of Professional Conduct ("Rules"), which replaced the Code of Professional Responsibility ("Code"). Rule 3.7(a) provides guidance concerning when a lawyer may remain in an action notwithstanding her potentially being called as a witness:

> (A) A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless:
>
> > (1) the testimony relates solely to an uncontested issue;
>
> \*    \*    \*
>
> > (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

22 N.Y.C.R.R. § 1200.0 (2009).

"[T]he movant . . . bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring [to the witness-advocate's client] is substantial." Murray v. Metro. Life Ins. Co., supra, 583 F.3d at 178 (inner quotation marks and

6

citation omitted). Testimony is prejudicial when it is "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." Murray v. Metro. Life Ins. Co., supra, 583 F.3d at 178 (inner quotation marks and citation omitted); accord Acker v. Wilger, supra, 2013 WL 1285435 at *1; Creditsights, Inc. v. Ciasullo, 05 Civ. 9345 (DAB), 2010 WL 2594038 at *2 (S.D.N.Y. June 16, 2010) (Batts, D.J.). The Second Circuit has identified four risks that Rule 3.7(a) seeks to alleviate:

> (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.

Murray v. Metro. Life Ins. Co., supra, 583 F.3d at 178.

"[W]here only the moving party intends to call the adversary's attorney as a witness, the movant must demonstrate both that the lawyer's testimony is necessary and that there exists a substantial likelihood that the testimony would be prejudicial to the witness-advocate's client." John Wiley & Sons, Inc. v. Book Dog Books, LLC, 126 F. Supp. 3d 413, 420

7

(S.D.N.Y. 2015) (Gorenstein, M.J.) (inner quotations and citations omitted).

### C. Application of the Foregoing Principles

Applying the foregoing standards here, Defendants have failed to demonstrate that Kimundi should be disqualified. Weighing such factors as the evidence presented, the significance of the matters, the weight of the testimony, and the availability of other evidence, it is apparent that Kimundi's testimony is not necessary.

Plaintiff concedes that during the conversation with Kimundi, Gorkic stated that he would swap the hard drives (Plaintiff's Memorandum at 19). Thus, Kimundi's testimony on this issue is not necessary.

Defendants have not explained what other testimony they would seek to elicit from Kimundi and have not, therefore, established that the testimony will be necessary or prejudicial to plaintiff. To the extent the telephone conversation can be construed to undercut any contention by plaintiff that it did not know of or approve certain aspects of Defendants' work, Kimundi's testimony will add nothing. The tape establishes what was said to her and what she said; there is nothing she can now say that

8

will add or delete words from the conversation. Her subjective intent at the time she made her statements is irrelevant.

Although I can hypothesize certain follow up questions that could be posed to Kimundi, Defendants do not describe the follow up questions they would ask. In addition, the follow-up questions of which I can conceive may not be questions that Defendants would want to ask; the answers could be terribly damaging to Defendants. As I noted in Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd., 07 Civ. 7983 (DAB)(HBP), 2014 WL 1201905 at *9 (S.D.N.Y. Mar. 24, 2014), speculation and conjecture are insufficient to satisfy the heavy burden of proof required to disqualify an attorney under oath advocate-witness rule. Accord John Wiley & Sons, Inc. v. Book Dog Books, LLC, supra, 126 F. Supp. 3d at 424; In re Galaxy Assocs., 114 B.R. 11, 14 (D. Conn. 1990); Creditsights, Inc. v. Ciasullo, 05 Civ. 9345 (DAB), 2010 WL 2594038 at *3 (S.D.N.Y. June 16, 2010) (defendant's reliance on conjecture as to what adversary's counsel might have recalled was "insufficient to . . . create a substantial likelihood of prejudice"); In re Manshul Const. Corp., 97 Civ. 4295 (DAB), 1998 WL 405039 at *4 (S.D.N.Y. July 20, 1998) (Batts, D.J.) ("Courts require a party seeking disqualification of counsel to meet a high standard of proof, and mere speculations will not suffice.").

IV. Conclusion

Accordingly, because Defendants have not shown that Kimundi's testimony is necessary or would be prejudicial to plaintiff, Defendants' motion to disqualify counsel is denied. My ruling is without prejudice to a renewed motion if new evidence develops demonstrating that Kimundi's testimony will be necessary and prejudicial to plaintiff.

Dated: New York, New York
July 27, 2018

SO ORDERED

*[signature]*
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel

**APPENDIX**

Telephone conversation between Gorkic and Kimundi, dated November 14, 2016:

UNKNOWN VOICE: Law Firm of Omar T. Mohammedi.

GORKIC: Hi. Its Justin from CAPEMS.

UNKNOWN VOICE: Hi Justin (Gorkic). What, what's up?

GORKIC: I got an email from Liz (Kimundi) with a couple of issues. One is the laptop for the new person . . . .

UNKNOWN VOICE: . . . Ok. And then I will transfer you to Liz (Kimundi).

(skipping to 20:35 of the recording)

KIMUNDI: Whoo Hoo. So, how fast. Thank you, thank you, thank you. Ok, so that Time Slips is done. So, now I guess what's remaining is the new laptop or the replacement laptop, sorry.

GORKIC: I'm going to come in today and try and swap the drive today.

KIMUNDI: Ok.

GORKIC: I just don't know when yet so I don't want to give you the time.

KIMUNDI: That's the drive for Israa's computer.

GORKIC: Right. Because I understand we are swapping from the tablet drive to, we're taking that and putting it into the other one.

KIMUNDI: Oh, Christ. Ok, and what about the laptop?

GORKIC: Ah, the laptop. Sorry, um, maybe I'm getting things mixed up. That's the laptop.

| | |
|---|---|
| KIMUNDI: | We have Issra Ismaeil's computer which is slow. That's the one in the back. And then we have the replacement back-up that he (Omar Mohammedi) brought in. So, what are we swapping drives in? I thought it was Israa's laptop. |
| GORKIC: | Is Israa using the tablet? She has a tower, right? |
| KIMUNDI: | She has a tower. The new Israa is the one using the tablet. |
| GORKIC: | Gotcha. Ok. So, instead of the tablet you want the new Israa to use the computer that he brought, right? |
| KIMUNDI: | Say what? |
| GORKIC: | You want the computer he brought to replace the tablet? |
| KIMUNDI: | Yes. |
| GORKIC: | Is that correct? |
| KIMUNDI: | Yes. Yes. |
| GORKIC: | Those are the drives we are going to try and swap. The current problem is that the computer he brought in only has Windows 7 Home Premium which may present some problems in the future. It won't let me connect to the network, to the server in the way that all the other one's are. So that's the first thing. And then in the future it might cause more problems so I'd rather try and avoid that. But I should be able to take the drive from the tablet and put it into the other one that he brought in and that will transfer all the licenses, including Windows. That's the only way that we can transfer the Windows license. So that's what we have to try. |
| KIMUNDI: | Justin, believe me, I can understand half of that but if you tell me you're going to swing by today |

> and you will take care of both computers I will be
> good . . .

(Schoenbach Aff. ¶ 17).